# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| MENACHEM GUREVITCH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KEYCORP, CHRISTOPHER M. GORMAN, BETH E. MOONEY, CLARK H. I. KHAYAT, and DONALD R. KIMBLE,<br><br>Defendants. | Civil Action No. 1:23-cv-01520-DCN |

**ROBERT J. TITMAS' MEMORANDUM OF LAW IN OPPOSITION TO THE
COMPETING LEAD PLAINTIFF MOTIONS AND IN
FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD
<u>PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................................. 1

II.    ARGUMENT....................................................................................................................... 3

    A.    Mr. Thompson is Inadequate and is Subject to a Unique Defense. ................................ 4

    B.    Mr. Titmas Has the Largest Financial Interest in the Relief Sought by the Class *and*

        Satisfies Rule 23. ....................................................................................................... 9

    C.    No Proof Exists to Rebut the Presumption in Favor of Mr. Titmas' Appointment as Lead

        Plaintiff. .................................................................................................................... 11

    D.    The Court Should Approve Mr. Titmas's Choice of Counsel........................................ 12

III.    CONCLUSION................................................................................................................... 13

## **TABLE OF AUTHORITES**

**Cases**

*In re Am. Med. Sys.*,
   75 F.3d 1069 (6th Cir. 1996) ................................................................................... 10

*Applestein v. Medivation Inc.*,
   No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 20, 2010).................. 8

*Bang v. Acura Pharms., Inc.*,
   Case No. 10 C 5757, 2011 U.S. Dist. LEXIS 2550 (E.D. Ill. Jan. 11, 2011) .......................... 7

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)................................................................................................. 2

*Batter v. Hecla Mining Co. et al.*,
   Nos. 19-cv-4883 (ALC); 19-cv-05719 (ALC), 2020 U.S. Dist. LEXIS 51665 (S.D.N.Y. Mar. 25, 2020) ............................................................................................................. 8

*In re Cardinal Health, Inc. Sec. Litig.*,
   226 F.R.D. 298 (S.D. Ohio 2005) ............................................................................... 5

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ............................................................................ 3, 4, 9

*In re Compuware Sec. Litig.*,
   386 F. Supp. 2d 913 (E.D. Mich. 2005)........................................................................ 2

*In re Enzymotec Ltd. Sec. Litig.*,
   Civil Action No. 14-5556, 2015 U.S. Dist. LEXIS 25720 (D.N.J. Mar. 3, 2015).................... 8

*Eshe Fund v. Fifth Third Bancorp*,
   Civil Action No. 1:08-cv-421, 2009 U.S. Dist. LEXIS 140342 (S.D. Ohio Mar. 5, 2009) ........... 3

*Garden City Emples. Ret. Sys. v. Psychiatric Sols., Inc.*,
   No. 3:09-00882, 2012 U.S. Dist. LEXIS 44445 (M.D. Tenn. Mar. 29, 2012)........................... 10

*George v. China Auto. Sys., Inc.*,
   11 Civ. 7533 (KBF), 2013 U.S. Dist. LEXIS 93698 (S.D.N.Y. July 3, 2013) ........................ 5

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
   No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043 (N.D. Ohio May 12, 2004)........................... 10

*Grae v. Corr. Corp. of Am.*,
   330 F.R.D. 481 (M.D. Tenn. 2019)............................................................................. 10

*Kniffin v. Micron Tech., Inc.,*
　379 F. Supp. 3d 259 (S.D.N.Y. 2019)................................................................ 6

*La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.,*
　No. 2:19-CV-3347, 2020 U.S. Dist. LEXIS 107933 (S.D. Ohio June 19, 2020)...................... 12

*Maeshiro v. Yatsen Holding Ltd.,*
　No. 22-CV-8165 (JPC) (BCM), 2023 U.S. Dist. LEXIS 126190 (S.D.N.Y. July 21, 2023) ... 6

*Marcus v. J.C. Penney Co.,*
　No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529 (E.D. Tex. Feb. 28, 2014) ....................... 7

*In re Netflix, Inc., Sec. Litig.,*
　Nos. 12–0225 SC, et al., 2012 U.S. Dist. LEXIS 59465 (N.D. Cal. Apr. 27, 2012) ............... 9

*Ohio Public Employees Ret. Sys. v. Fannie Mae,*
　357 F. Supp. 2d 1027 (S.D. Ohio 2005) ........................................................... 4, 10

*Owens v. FirstEnergy Corp.,*
　No. 2:20-cv-03785, 2020 U.S. Dist. LEXIS 219573 (S.D. Ohio Nov. 23, 2020) ....................... 1

*In re Peregrine Sys., Inc. Sec. Litig.,*
　No. 02-cv-870, 2003 WL 23955714 (S.D. Cal. Jan. 30, 2003) ................................................ 7

*Plagens v. Deckard,*
　No. 1:20-cv-2744, 2021 U.S. Dist. LEXIS 143359 (N.D. Ohio Aug. 2, 2021)....................... 4

*Plymouth Cty. Ret. Sys. v. Apache Corp.,*
　566 F. Supp. 3d 712 (S.D. Tex. 2021) ...................................................... 5, 6, 7, 9

*Porzio v. Overseas Shipholding Grp.,*
　12 Civ. 7948, et al., 2013 U.S. Dist. LEXIS 14463 (S.D.N.Y. Feb. 1, 2013) ....................... 5

*Rao v. Quorum Health Corp.,*
　221 F. Supp. 3d 987 (M.D. Tenn. 2016) .............................................................. 12

*In re Regions Morgan Keegan Closed-End Fund Litig.,*
　No. 07-02830, 2010 U.S. Dist. LEXIS 132902 (W.D. Tenn. Dec. 15, 2010)........................... 4, 9

*Rodriguez v. Draftkings Inc.,*
　21 Civ. 5739 (PAE), et al., 2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12, 2021) ...*pasim*

*Ross v. Abercrombie & Fitch Co.,*
　257 F.R.D. 435 (S.D. Ohio 2009)....................................................................... 10

*Schaffer v. Horizon Pharma plc,*
　No. 16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175 (S.D.N.Y. June 27, 2016) ............... 8

*Shaffer v. Digit. Generation, Inc.*,
   No. 3:13-CV-1684-N, 2013 U.S. Dist. LEXIS 204461 (N.D. Tex. Sept. 19, 2013) ................ 7

*St. Clair Cnty. Emples. Ret. Sytem v. Acadia Healthcare Co.,*
   No. 3:18-cv-00988, 2019 U.S. Dist. LEXIS 22095 (M.D. Tenn. Jan. 9, 2019) ..................... 12

*Tsirekidze v. Syntax-Brillian Corp.,*
   Nos. CV–07–2204-PHX-FJM, et al., 2008 U.S. Dist. LEXIS 118562 (D. Ariz. Apr. 7, 2008)
   ........................................................................................................................................... 7, 8

*In re Veeco Instruments, Inc.*,
   233 F.R.D. 330 (S.D.N.Y. 2005) ............................................................................................ 5

*Zlotnick v. Tie Comms.*,
   836 F.2d 818 (3d Cir. 1988) ................................................................................................... 4

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................................... *passim*

Robert J. Titmas ("Mr. Titmas") respectfully submits this memorandum of law in opposition to the competing lead plaintiff motions and in further support of his motion for appointment as lead plaintiff, filed in the above-captioned securities class action lawsuit (ECF No. 18) pending against KeyCorp ("Key" or the "Company"), Christopher M. Gorman ("Gorman"), Beth E. Mooney ("Mooney"), Clark H. I. Khayat ("Khayat"), and Donald R. Kimble ("Kimble"), (collectively, "Defendants") (the "Action").

## I.  PRELIMINARY STATEMENT

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires courts to appoint a lead plaintiff in securities class actions asserting violations of the Securities Exchange Act of 1934. It instructs courts to appoint as "Lead Plaintiff" the plaintiff "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). That person or entity is the plaintiff or movant with (1) the "largest financial interest in the relief sought by the class" who (2) also satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I).

Mr. Titmas is the movant with the "largest financial interest" in the outcome of the litigation who *also* satisfies Rule 23's typicality and adequacy requirements. To determine financial interest, Courts in the Sixth Circuit, and throughout the country, typically use the *Olsten*/*Lax* factor test: (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate losses suffered. *Owens v. FirstEnergy Corp.*, No. 2:20-cv-03785, 2020 U.S. Dist. LEXIS 219573, at *17 (S.D. Ohio Nov. 23, 2020). Mr. Titmas bought 10,800 shares, held all 10,800 through the end of the class period, spent $151,379.00 and lost $35,068.31. *See* ECF No. 18-4 ("Titmas Loss Chart").

| Movant | Gross Shares Purchased | Net Shares Retained | Net Funds Expended | Claimed Losses |
|---|---|---|---|---|
| Richard Thompson | 83,900 | 19,000 | $350,324.86 | $173,921.20 |
| Robert J. Titmas | 10,800 | 10,800 | $151,379.00 | $35,068.31 |
| Thomas Marcotte | 572 | 572 | $8,648.64 | $2,484.00 |

*See* ECF Nos. 18-4, 19-3, and 20-3.

Using the four *Lax* factors as required, Mr. Titmas has the "largest financial interest" in the litigation relative to any other shareholder, with one exception. One movant, Richard Thompson ("Mr. Thompson"), claims a larger "financial interest" under the four factors. However, as explained below, Mr. Thompson's trading history in Key renders him atypical and vulnerable to unique defenses that preclude him from serving as the Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mr. Thompson engaged in in-and-out-trading strategies that allowed him to profit from the alleged fraud by approximately $30,000 that will subject the class to prejudicial defenses during class certification proceedings and jeopardize the class's ability to succeed in this lawsuit. *See Rodriguez v. Draftkings Inc.*, 21 Civ. 5739 (PAE), et al., 2021 U.S. Dist. LEXIS 219489, at *26-27 (S.D.N.Y. Nov. 12, 2021) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 228 (1988); *see also In re Compuware Sec. Litig.*, 386 F. Supp. 2d 913, 920 (E.D. Mich. 2005) (granting summary judgment for defendants where the lead plaintiff sold its securities prior to the date the alleged fraud was found to have been revealed to the public).

Unlike Mr. Thompson, Mr. Titmas has made a preliminary showing of the typicality and adequacy requirements of Rule 23, which is all that is required at this stage in the litigation. *Eshe Fund v. Fifth Third Bancorp*, Civil Action No. 1:08-cv-421, 2009 U.S. Dist. LEXIS 140342, at *17 (S.D.

Ohio Mar. 5, 2009). Mr. Titmas is typical of the other class members insofar as he acquired Key securities during the Class Period and was damaged as a result. Mr. Titmas does not have any interests adverse to the class and, as demonstrated in his declaration accompanying his motion, is ideally suited to serve as the lead plaintiff. *See* ECF No. 18-6. Indeed, Mr. Titmas is a sophisticated investor with a bachelor's degree in finance from Ohio State. He is currently retired, but prior to that founded ABCO Fire Protection Inc. in Cleveland, Ohio in 1975, and managed approximately 125 employees. Before founding ABCO, Mr. Titmas was a stockbroker at Shearson Lehman.

In sum, Mr. Titmas is the movant with the largest financial interest in the action that also satisfies Rule 23's typicality and adequacy requirements. Mr. Titmas is entitled to the presumption of being the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B). As the other movants cannot rebut this presumption with proof that Mr. Titmas is somehow atypical or inadequate, he is entitled to be appointed as the lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, Mr. Titmas respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## II.    ARGUMENT

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Once this presumption is triggered, it can only be rebutted upon "proof" that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II); *see In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). "If, as a result of this process, the district court determines that the presumptive lead plaintiff does not meet the typicality or adequacy requirement, it then must proceed to determine whether the plaintiff with the next lower stake in the litigation has made a prima facie showing of typicality and adequacy." *Id.* at 731; *see also In re Regions Morgan Keegan Closed-End Fund Litig.,* No. 07-02830,

3

2010 U.S. Dist. LEXIS 132902, at *22 (W.D. Tenn. Dec. 15, 2010) (citing *In re Cavanaugh*, 306 F.3d at 731("if the presumption is rebutted, a court must repeat the examination process with the movant having the second largest financial stake in the litigation")).

### A. Mr. Thompson is Inadequate and is Subject to a Unique Defense.

The PSLRA requires that the presumptive lead plaintiff "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Courts have applied this directive at the lead plaintiff stage by analyzing the typicality and adequacy requirements of Rule 23. *Ohio Public Employees Ret. Sys. v. Fannie Mae,* 357 F. Supp. 2d 1027, 1034 (S.D. Ohio 2005). A movant that "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class" cannot be appointed. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) Specifically, shareholders that engage in high-frequency or in-and-out trading strategies pose a unique "reliance" issue, as their trading pattern suggests they did not rely on the alleged misstatements and omissions and "short sellers may be uniquely vulnerable to certain defenses. *See, e.g., Zlotnick v. Tie Comms.*, 836 F.2d 818, 823-24 (3d Cir. 1988) (declining to presume fraud-on-the-market reliance for a short seller)." *Plagens v. Deckard*, No. 1:20-cv-2744, 2021 U.S. Dist. LEXIS 143359, at *34 (N.D. Ohio Aug. 2, 2021).

Although Mr. Thompson claims the largest financial interest of all Lead Plaintiff movants, he is inadequate, atypical, and subject to unique defenses as an in-and-out trader. In-and-out "trades occur when one purchases and sells all of their holdings during the class period, *i.e.,* after the stock price was fraudulently inflated and before it dropped due to a corrective disclosure." *Draftkings*, 2021 U.S. Dist. LEXIS 219489, at *13. Throughout the Class Period, Mr. Thompson had a pattern of repeatedly buying thousands of Key shares and then entirely exiting his position. *Id.* In fact, Mr. Thompson purchased thousands of shares and entirely exited his position ***10 separate times***

during the Class Period. And out of those 10 separate exits, 9 of them resulted in Mr. Thompson selling his **shares for a profit** amounting to a total of nearly $30,014.00]. Mr. Thompson's loss analysis does **not** account for the profit he received from selling these shares.

Courts throughout the country have acknowledged the dangers associated with atypical investment strategies, such as in-and-out trading. *See generally In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 309-11 (S.D. Ohio 2005) ("*Cardinal Health I*") (finding "presumption of typicality and adequacy rebutted" as to movant's "trading patterns"; finding that "putative class may not be best served by [another movant's] additional complications"). Mr. Thompson's in-and-out trading evidences he is atypical and subject to "unique inquiries regarding [his] trading patterns and why [he] made investment decisions, whether the fraud was in fact irrelevant to [his] purchasing and sales decisions, and whether on individual trades [he] profited. These inquiries will also require considerable time and resources and indeed threaten to become the focus of the litigation." *George v. China Auto. Sys., Inc.,* 11 Civ. 7533 (KBF), 2013 U.S. Dist. LEXIS 93698, at *19 (S.D.N.Y. July 3, 2013); *see Plymouth Cty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 719 (S.D. Tex. 2021) (high-frequency trader "raise[s] serious concerns about [a movant's] typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions" and ultimately rejected movant); *Porzio v. Overseas Shipholding Grp.*, 12 Civ. 7948, et al., 2013 U.S. Dist. LEXIS 14463, at *16 (S.D.N.Y. Feb. 1, 2013) ("Even if the alleged losses [of in-and-out traders] could, on some theory, establish the greatest financial interest, . . . the OSG Investor Group is subject to 'unique defenses that render [them] incapable of adequately representing the class,' thus rebutting any presumptive lead plaintiff status."); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (investor who sold stock prior to any corrective disclosure would "at the very least, [be] subject to a unique

5

defense"). "[W]hile [Mr. Thompson] might ultimately succeed in persuading the Court that his idiosyncrasies ought not defeat class certification or harm his claims' prospects on the merits, the ***interests of the class disfavor exposing it to the risk that his history will dog him***. The question of whether [Mr. Thompson's] trading practice compromises his claims and his adequacy as a class representative is sure to arise in the litigation. That potential to distract militates against his appointment." *Draftkings*, 2021 U.S. Dist. LEXIS 219489, at *28.

Indeed, Mr. Thompson's trading patterns demonstrate that he was trading based on market volatility rather than the Company's alleged misstatements, which makes him highly atypical of the Class of investors in this Action. This is evident by the ***$30,000 in profits*** he received from selling his Key shares at artificially inflated prices during the Class Period (which were not disclosed in his loss analysis). The LIFO loss methodology, the same methodology used by all movants, is widely used and favored in securities class actions specifically because "'the last purchases made during the class period' are matched up with 'the first sales made during the class period,' which ***tends to offset any gains attained from artificially inflated stock prices during the class period***." *Maeshiro v. Yatsen Holding Ltd.*, No. 22-CV-8165 (JPC) (BCM), 2023 U.S. Dist. LEXIS 126190, at *9-10 (S.D.N.Y. July 21, 2023) (quoting *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 264 (S.D.N.Y. 2019)). Mr. Thompson calculated his loss using LIFO, which correctly identified a gain of more than $30,000, but then failed to account for that gain in his loss analysis.

Magistrate Judge Edison's analysis in *Plymouth County Retirement System v. Apache Corp.* is illustrative. In *Apache*, the court disqualified the lead plaintiff movant with the largest financial interest because he "repeatedly bought and sold" stock during the class period, including multiple purchases of shares that were resold "on the same day or within a matter of days." 566 F.

Supp. 3d at 719-20. Specifically, the court concluded that the movant's "frenzied trading activity in [company] stock renders him atypical and subject to unique defenses" that "he was trading in response to information other than the alleged misstatements and omissions," and precluded his appointment as lead plaintiff. *Id*. at 719; *see also, e.g., Shaffer v. Digit. Generation, Inc*., No. 3:13-CV-1684-N, 2013 U.S. Dist. LEXIS 204461, at *8-9 (N.D. Tex. Sept. 19, 2013) (rejecting movant whose "high volume trading activity, including buying and selling [company] stock on the same day, raises serious concerns about his typicality and his susceptibility to unique defenses"); *Bang v. Acura Pharms., Inc.*, Case No. 10 C 5757, 2011 U.S. Dist. LEXIS 2550, at *16 (E.D. Ill. Jan. 11, 2011) ("[U]nusually high-volume and high frequency trading can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions."); *Tsirekidze v. Syntax-Brillian Corp.,* Nos. CV–07–2204-PHX-FJM, et al., 2008 U.S. Dist. LEXIS 118562, at *18 (D. Ariz. Apr. 7, 2008) (rejecting movant because its "frantic trading belies any true reliance on company reports or even the integrity of the stock price itself"); *In re Peregrine Sys., Inc. Sec. Litig.*, No. 02-cv-870, 2003 WL 23955714, at *3 (S.D. Cal. Jan. 30, 2003) ("Poe may be subject to the unique defense that he relied not on any misstatement or omission of material fact when deciding to buy or sell, but instead on the daily fluctuations in the stock price.").

Similar to the lead plaintiff movant in *Apache* as well as the other cases cited above, Mr. Thompson bought and sold shares of Key during the Class Period, many of which were resold on the same day or within a matter of days. Such in-and-out trading appears to be reflective of Mr. Thompson's overall trading strategy designed to capitalize "on the market's daily volatility" and "relies more on speculation rather than investing." *Marcus v. J.C. Penney Co*., No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at *21-22 (E.D. Tex. Feb. 28, 2014) (rejecting movant engaged in "rapid trading activity," as "[t]his activity would not be typical of the class because the proposed

class's damages stem. From reliance on Defendant's financial statements"). Indeed, while the "record before the court may be insufficient to establish that [Mr. Thompson] was a day-trader *qua* day-trader," it "is sufficient, however, to raise serious concerns about [his] typicality and about [his] susceptibility to the defense that [he] was trading in response to information other than the alleged misstatements and omissions made by [defendants]." *Applestein v. Medivation Inc.*, No. C 10-00998 MHP, 2010 U.S. Dist. LEXIS 98255, at *9-10 (N.D. Cal. Sept. 20, 2010); *Syntax-Brillian,* 2008 U.S. Dist. LEXIS 118562, at *18 ("While a day trader is not ipso facto disqualified from the Lead Plaintiff role, McCullough's unique trading pattern combined with questions about adequacy establish that his group should not represent the class."); *see also Draftkings,* 2021 U.S. Dist. LEXIS 219489, at *27 ("[T]here is a real risk that the idiosyncrasies of [Mr. Thompson's] purchases would become just such a distraction at trial, were [Mr. Thompson] appointed lead plaintiff, with his trading history inhibiting his ability to serve as an untarnished proxy for the class.").

The possibility that a unique defense could become the focus of the litigation is enough to disqualify a movant at the lead plaintiff stage. *See Batter v. Hecla Mining Co. et al.,* Nos. 19-cv-4883 (ALC); 19-cv-05719 (ALC), 2020 U.S. Dist. LEXIS 51665, at *22 (S.D.N.Y. Mar. 25, 2020) ("Where there is at least a potential that the presumptively most adequate Lead Plaintiff will be subject to unique defenses . . . disqualification is appropriate."); *Schaffer v. Horizon Pharma plc,* No. 16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175, at *10 (S.D.N.Y. June 27, 2016) ("[M]any courts have rejected appointments of lead plaintiffs based on *potential* risks.") (emphasis in original); *In re Enzymotec Ltd. Sec. Litig.*, Civil Action No. 14-5556, 2015 U.S. Dist. LEXIS 25720, at *7 (D.N.J. Mar. 3, 2015) ("[T]he competing plaintiff must show simply that there is some degree of probability that the defense might 'become a major focus' in the case."); *In re*

8

*Netflix, Inc., Sec. Litig.,* Nos. 12–0225 SC, et al., 2012 U.S. Dist. LEXIS 59465, at \*17 (N.D. Cal. Apr. 27, 2012) ("There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial."). Accordingly, "[t]here is simply no reason to subject the putative class to the unique defenses that would undoubtedly take center stage" given the likelihood Defendants will argue that Mr. Thompson did not rely on their alleged misstatements in making his investment decisions. *Apache*, 566 F. Supp. 3d at 720.

> **B.** **Mr. Titmas Has the Largest Financial Interest in the Relief Sought by the Class *and* Satisfies Rule 23.**

As demonstrated below, Mr. Titmas has the largest financial interest once Mr. Thompson is disqualified:

| Movant | Gross Shares Purchased | Net Shares Retained | Net Funds Expended | Claimed Losses |
|---|---|---|---|---|
| Richard Thompson | 83,900 | 19,000 | $350,324.86 | $173,921.20 |
| *Robert J. Titmas* | *10,800* | *10,800* | *$151,379.00* | *$35,068.31* |
| Thomas Marcotte | 572 | 572 | $8,648.64 | $2,484.00 |

*See* ECF Nos. 18-4, 7-5, 19-3, and 20-3. Therefore, the Court must begin the lead plaintiff process over again with Mr. Titmas. *See In re Regions,* 2010 U.S. Dist. LEXIS 132902, at \*22 (citing *In re Cavanaugh*, 306 F.3d at 731 ("[I]f the presumption is rebutted, a court must repeat the examination process with the movant having the second largest financial stake in the litigation")

Aside from the largest financial interest, the PSLRA requires that the presumptive lead plaintiff "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

9

Courts have applied this directive at the lead plaintiff stage by analyzing the typicality and adequacy requirements of Rule 23. *Fannie Mae*, 357 F. Supp. 2d 1027, 1034. Here, Mr. Titmas satisfies both the typicality and adequacy prongs of Rule 23, requiring his appointment as Lead Plaintiff.

"In the Sixth Circuit, the test for typicality is whether a named plaintiff's claims 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'" *Garden City Emples. Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-00882, 2012 U.S. Dist. LEXIS 44445, at *99-100 (M.D. Tenn. Mar. 29, 2012) (quoting *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir. 1996)). There can be no dispute that Mr. Titmas satisfies the typicality requirement. Like all members of the Class, Mr. Titmas: (1) purchased Key securities during the Class Period; (2) at prices artificially inflated by the false and misleading statements and/or omissions by Defendants; and (3) suffered heavy losses as a result of Defendants' material misstatements. Thus, Mr. Titmas' claims are substantially similar, if not identical, to those of absent Class members. *See Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 444 (S.D. Ohio 2009) (collecting cases); *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 501 (M.D. Tenn. 2019) (noting that "typicality is met if the class members' claims are fairly encompassed by the named plaintiffs claims.").

A lead plaintiff satisfies the adequacy requirement of Rule 23 in the Sixth Circuit by showing that the movant: (1) has common interests with the unnamed Class members; and (2) will vigorously prosecute the action with the assistance of qualified counsel. *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043, at *29 (N.D. Ohio May 12, 2004). Mr. Titmas readily meets these requirements as he has no conflicts with absent Class members and is highly

10

motivated to recover for losses suffered from Defendants' alleged violations of the federal securities laws – the same injury incurred by the proposed Class, arising from the same alleged conduct.

As set forth in his PSLRA certification and declaration, Mr. Titmas is a sophisticated investor with a bachelor's degree in finance from Ohio State. *See* ECF No. 18-6, (Titmas Declaration). Mr. Titmas is currently retired, but prior to that he founded ABCO Fire Protection Inc. in Cleveland, Ohio in 1975, and managed approximately 125 employees. *Id.* Before founding ABCO, Mr. Titmas was a stockbroker at Shearson Lehman. *Id.* Further, Mr. Titmas has experience hiring and overseeing attorneys for routine business and estate planning matters. *Id.* Accordingly, Mr. Titmas is especially qualified to direct and oversee the litigation for the benefit of himself and the Class.

Mr. Titmas' adequacy is further bolstered by his choice of counsel, having chosen Levi & Korsinsky, LLP ("Levi & Korsinsky") as proposed Lead Counsel for the Class and Cummins Law LLC ("Cummins") as Liaison Counsel. Both Levi & Korsinsky and Cummins, who have successfully worked together in other securities matters, are highly experienced in securities class actions and are well qualified to litigate the Action on behalf of the Class and their appointments should also be approved. *See* ECF Nos. 18-7 and 18-8 (firm résumés of Levi & Korsinsky and Cummins).

Mr. Titmas has the largest financial interest in the relief sought by the class and otherwise satisfies Rule 23's typicality and adequacy requirements. He is, therefore, the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

**C.      No Proof Exists to Rebut the Presumption in Favor of Mr. Titmas' Appointment as Lead Plaintiff.**

Having the largest financial interest *and* satisfying the Rule 23 requirements of adequacy and typicality, Mr. Titmas is entitled to the presumption of "most adequate plaintiff." This presumption may be rebutted only upon proof by a class member that Mr. Titmas "will not fairly and adequately

11

protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C § 78u-4(a)(3)(B)(iii)(II); *St. Clair Cnty. Emples. Ret. Sytem v. Acadia Healthcare Co.,* No. 3:18-cv-00988, 2019 U.S. Dist. LEXIS 22095, at \*7 (M.D. Tenn. Jan. 9, 2019); *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.,* No. 2:19-CV-3347, 2020 U.S. Dist. LEXIS 107933, at \*23-24 (S.D. Ohio June 19, 2020) ("*Cardinal Health II*").; *Rao v. Quorum Health Corp.*, 221 F. Supp. 3d 987, 989 (M.D. Tenn. 2016).

The two competing lead plaintiff movants, Thompson and Marcotte, can only rebut that presumption with actual proof that Mr. Titmas is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Quorum Health,* 221 F. Supp. 3d at 989 (the lead plaintiff presumption "may be rebutted only upon proof"). No such proof exists here, requiring the Court to appoint Mr. Titmas as lead plaintiff. The interests of Mr. Titmas align with the interests of the members of the Class and Mr. Titmas has retained counsel well versed in securities class action litigation. Accordingly, his motion should be granted in its entirety.

### D.  The Court Should Approve Mr. Titmas's Choice of Counsel.

The Court should approve Mr. Titmas' selection of Levi & Korsinsky as Lead Counsel for the putative Class. The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class, subject to approval by the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The attorneys at Levi & Korsinsky are highly experienced in class action securities litigation and will prosecute the Action effectively and expeditiously. Likewise, the attorneys at Cummins Law are also experienced in class action securities lawsuits. *See* ECF Nos.6-6 and 6-7, (firm resumes). Thus, Mr. Titmas' chosen counsel are eminently qualified and prepared to devote the necessary time and resources to this Action for the benefit of Mr. Titmas and the absent Class members.

## III.    CONCLUSION

For all the foregoing reasons, Mr. Titmas respectfully requests that the Court grant his motion: (i) appointing him as Lead Plaintiff; (ii) approving his selection of Levi & Korsinsky as Lead Counsel and Cummins Law as Liaison Counsel; and (iii) granting such other relief as the Court.

may deem just and proper.

DATED: October 17, 2023

CUMMINS LAW LLC

/s/ *James R. Cummins*
James R. Cummins (0000861)
312 Walnut Street, Suite 1530
Cincinnati, Ohio 45202
Tel: 513.721.9000
Fax: 513.721.9001
jcummins@cumminslaw.us

*Liaison Counsel for Mr. Titmas and*
*[Proposed] Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton (*pro hac vice* forthcoming)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Mr. Titmas and [Proposed]*
*Lead Counsel for the Class*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys on record.

/s/ *James R. Cummins*
James R. Cummins