**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MENACHEM GUREVITCH, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:23-cv-01520-DCN |
| Plaintiff, | **RICHARD THOMPSON'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL** |
| v. | |
| KEYCORP, CHRISTOPHER M. GORMAN, BETH E. MOONEY, CLARK H. I. KHAYAT, and DONALD R. KIMBLE, | |
| Defendants. | |

Lead Plaintiff Movant Richard Thompson ("Thompson") submits this reply memorandum of law in further support of his motion for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 19), and in response to the opposition to his motion filed by competing movant Robert J. Titmas ("Titmas") (Dkt. No. 22, "Titmas Opp.").

## I.      PRELIMINARY STATEMENT

Thompson is undisputedly the movant with the largest financial interest in this matter, and therefore the presumptively most adequate plaintiff to be appointed as lead plaintiff. Faced with this reality Titmas argues that Thompson should be disqualified as inadequate and subject to unique defenses on the basis that Thompson bought and sold shares early in the class period, before buying and retaining shares through the end of the class period. Titmas's attack is legally baseless, and does not constitute the "proof" required to rebut the presumption that Thompson is the most adequate plaintiff. As such, Thompson's motion for appointment as lead plaintiff and approval of counsel should be granted.

## II.     THOMPSON IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF

Thompson satisfies all three requirements to be the presumptively most adequate plaintiff because he filed a timely motion, has the largest financial interest, and made the required preliminary showing of his adequacy.

Both of the competing movants concede that Thompson has the largest financial interest in the relief sought by the class. Thomas Marcotte ("Marcotte") originally filed a motion for appointment as lead plaintiff. *See* Dkt. No. 20. However, Marcotte subsequently filed a notice conceding that he "does not have the 'largest financial interest.'" *See* Dkt. No. 21. Titmas is the only movant that filed an opposition to Thompson's motion for appointment as lead plaintiff. Like Marcotte, Titmas concedes that he does not have the largest financial interest and acknowledges that Thompson has the largest financial interest. *See* Titmas Opp. at 4 ("Mr. Thompson claims the

1

largest financial interest of all Lead Plaintiff movants."). While Titmas points out that Thompson has a small gain on some of his class period transactions (*see* Titmas Opp. at 2, 6), Titmas does not contest the fact than Thompson's loss is still far larger than Titmas's loss, even considering such gains. Thompson's loss, including his offsetting gains, is still $145,556.96, compared to Titmas's loss of just $34,984.61. *See* Thompson Opp. (Dkt. No.23) at 3.

Since Thompson also filed a timely motion, and made the required preliminary showing of adequacy and typicality, Thompson satisfies all three requirements to establish that he is the presumptively most adequate plaintiff to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

## III.  TITMAS HAS NOT REBUTTED THE PRESUMPTION THAT THOMPSON IS THE MOST ADEQUATE PLAINTIFF

The presumption that Thompson is the most adequate plaintiff may be rebutted only upon "proof" that Thompson "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render [him] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Importantly, Titmas must provide "proof." Speculative or conclusory assertions are insufficient. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011); *Murphy v. JBS S.A.*, No. 17-cv-3084, 2017 WL 4480751, at *5 (E.D.N.Y. Oct. 6, 2017) ("Conclusory assertions and mere speculation will not suffice."); *Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1054 (N.D. Cal. 2001) ("Speculative assertions [are] insufficient to rebut the lead plaintiff presumption."). Proof demands "specific support" and "evidence" of the "actual or potential conflict of interest or a defense." *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004); *Vladimir v. Bioenvision, Inc.*, No. 07-cv-6416, 2007 WL 4526532, at *10 (S.D.N.Y. Dec. 21, 2007) (same). Titmas has failed to meet this high standard.

Titmas argues that Thompson is "inadequate, atypical, and subject to unique defenses" on the claimed basis that Thompson is a "in-and-out trader" which is a person that "purchases and sells all of their holdings during the class period." Titmas Opp. at 4. Titmas's attack is baseless.

A.      Thompson Is Not an In-And-Out Trader

Some courts have disqualified purported "in-and-out traders"—traders that bought and sold all of their shares during the class period ***and did not retain any shares at the time of a corrective disclosure***—because such traders cannot establish that the revelation of the company's fraud caused their loss under the Supreme Court's holding in *Dura Pharms.*, *Inc. v. Broudo*, 544 U.S. 336 (2005). *See Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 237 (E.D.N.Y. 2011) ("In proving loss causation, a party typically identifies a disclosure of the fraud that causes a drop in the price of the stock. If, however, 'the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have [led] to any loss.'") (quoting *Dura*, 544 U.S. at 342). Importantly, the fact that a movant has some in-and-out transactions does not disqualify the movant as an "in-and-out trader." *See Sklar v. Amarin Corp. PLC*, No. 13-cv-06663, 2014 WL 3748248, at *9 (D.N.J. July 29, 2014) (movant "is not an in-and-out trader" even though he "completely divested . . . twice in the first quarter of 2011" because he "subsequently reinvested" and held shares "at the end of the class period, at the time of [the company's] corrective disclosures").

The cases disqualifying in-and-out traders do not apply to Thompson because Thompson held shares at the time of every corrective disclosure. *See Sklar*, 2014 WL 3748248, at *9. Thompson purchased 19,000 shares between March 30, 2022 and March 2, 2023 (*see* Dkt. Nos. 19-2, 19-3) that he held through all three alleged corrective disclosures on March 6, 2023, March 13, 2023, and June 12, 2023. *See* Dkt. No. 1 (Complaint) ¶¶ 44, 49, 55. In fact, Thompson held some of these shares for more than a year prior to the final corrective disclosure. As such, he is not

3

an in-and-out trader, and Titmas's cited authority disqualifying in-and-out traders is inapposite. *See, e.g, Porzio v. Overseas Shipholding Grp.*, No. 12-cv-7948, 2013 WL 407678, at *3 (S.D.N.Y. Feb. 1, 2013) (disqualifying movants that "sold their stock almost a year before the alleged fraud was discovered" because "there is a strong likelihood that their entire claimed losses will be unrecoverable") (cited in Titmas Opp. at 5); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (disqualifying movant that "sold all its stock in January 2005, prior to the issuance of the curative disclosure on February 10, 2005") (cited in Titmas Opp. at 5).

Moreover, courts routinely appoint movants that bought and sold shares during the class period, often disregarding competing movants' objections that they are "in-and-out traders," so long as they held shares at the time of the corrective disclosure. *See Sklar*, 2014 WL 3748248, at *9; *Robb v. Fitbit Inc.*, No. 16-cv-00151, 2016 WL 2654351, at *6 (N.D. Cal. May 10, 2016) (appointing an alleged in-and-out trader that "retained 61,000 shares . . . at the end of the class period" and noting that "courts have certified classes and appointed in-and-out traders as class representatives in securities actions"); *Dutton v. Harris Stratex Networks, Inc.*, No. 08-cv-755, 2009 WL 1598408, at *2 (D. Del. June 5, 2009) (appointing a lead plaintiff group that "acquired roughly 900,000 shares" during the class period, but "sold the bulk of their shares" and held only 71,126 shares at the time of the corrective disclosure); *Cole v. Health Mgmt. Assocs., Inc.*, No. 07-cv-484, 2008 WL 11334897, at *6 (M.D. Fla. May 14, 2008) (appointing an alleged in-and-out trader because she "held 12,443 shares . . . at the time of the July 31, 2007 press statement [disclosure]"); *Einhorn v. AxoGen, Inc.*, No. 8:19-cv-69, 2019 WL 5636382, at *2 (M.D. Fla. Apr. 30, 2019) ("That Detroit both bought and sold AxoGen, Inc. securities within the Class Period is of no consequence; many institutional investors often do the same."); *Gilbert v. Azure Power Glob. Ltd.*, No. 1:22-cv-7432, 2022 WL 17539172, at *6 (S.D.N.Y. Dec. 8, 2022) (appointing a movant

that "engaged in multiple transactions buying and selling Azure stock throughout the class period" including once on the same day and "a few transactions that occurred days apart"); *Serafimov v. Netopia, Inc.*, No. 04-cv-03364, 2004 WL 7334061, at *6 (N.D. Cal. Dec. 3, 2004) (appointing a lead plaintiff that "did not retain more shares than he traded on what appears to be an in and out basis" because he "also engaged in retention trading").[1] The same result is warranted with respect to Thompson.

In fact, Titmas's own authority regarding in-and-out transactions supports Thompson's appointment as lead plaintiff. Specifically, the *DraftKings* opinion, which Titmas relies on throughout his briefing (*see* Titmas Opp. at 2, 4, 6, 8), holds that in-and-out trading is not alone disqualifying. *See Rodriguez v. DraftKings Inc.*, No. 21-cv-5739, 2021 WL 5282006, at *10 (S.D.N.Y. Nov. 12, 2021) ("The Court thus regards the various instances on which Kaintz fully exited his DraftKings position during the class period as revealing a degree of potential that Kaintz may be subject to unique defenses . . . but, unlike his sloppy court submissions and short selling and day trading, ***not as alone dispositive of his inadequacy***.") (emphasis added).

In sum, Titmas's arguments are meritless and he has failed to rebut the presumption that Thompson is the most adequate plaintiff.

---

[1] To the extent that two cases cited by Titmas may be read to disagree with this line of authority— namely, *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712 (S.D. Tex. 2021) and *George v. China Auto. Sys., Inc.*, No. 11-cv-7533, 2013 WL 3357170 (S.D.N.Y. July 3, 2013), cited in the Titmas Opp. at 5—they are outliers and should not dictate the result here. Moreover, the movants in both cases had additional issues with their trading patterns beyond just in-and-out transactions that led to their disqualification. For example, the court in *Plymouth County* disqualified the movant for the additional reasons that he was "net seller" and a "net gainer" who had "bought and sold large portions of … stock on the same day." *Id.* at 719. Similarly, the court in *George* disqualified the movants for the additional reason that they "increased their holdings . . . after each had allegedly learned of the fraud." *Id.* at *3. None of these additional reasons apply to Thompson.

**B.      Thompson Is Not a High-Frequency Trader**

Titmas also argues that Thompson should be disqualified because he is a "high-frequency" trader. *See* Titmas Opp. at 4-5. Titmas provides no definition of "high-frequency."

However, Thompson is not a high-frequency trader. Unlike high-frequency traders that courts have disqualified, Thompson's transactions were not on the same days—in fact, many of his purchases and subsequent sales were weeks or months apart (*e.g.* a purchase on June 9, 2021, followed by a sale on October 1, 2021)—and all of his 33 transactions fit entirely on a single page. *Compare* Dkt. 19-2 (Thompson's Certification), *with Shaffer v. Digital Generation, Inc.*, No. 3:13-cv-1684, 2013 WL 12430537, at *3 (N.D. Tex. Sept. 19, 2013) (disqualifying movant that "engaged in over 800 trades . . . during a 266-day window within the Class Period, making as many as 55 transactions in a single day") (cited in Titmas Opp. at 7); *see also Tsirekidze v. Syntax-Brillian Corp.*, No. 07cv-2204, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) (disqualifying movant whose "trading history reveals that he was unusually active, making as many as 80 separate transactions . . . in a single day") (cited in Titmas Opp. at 7, 8).

Even if Thompson had engaged in such transactions (he did not), being a high-frequency day trader "is not ipso facto disqualif[ying]." *Id.*; *see also Prefontaine v. Rsch. in Motion Ltd.*, No. 11-cv-4068, 2012 WL 104770, at *4 (S.D.N.Y. Jan. 5, 2012) ("[T]he prevailing view in this Circuit is that 'day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts.'") (citation omitted). *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 410 (D. Del. 2014) (same); *Chauhan v. Intercept Pharms.*, No. 21-cv-00036, 2021 WL 235890, at *6 (S.D.N.Y. Jan. 25, 2021) ("Absent evidence that Rice did not rely on the integrity of the market

6

price, which has not been offered at this stage, there is no reason to disqualify Rice as lead plaintiff.").

As such, Titmas has failed to prove that Thompson is a high-frequency trader, and has failed to rebut the presumption that Thompson is the most adequate plaintiff.

## IV. CONCLUSION

For the foregoing reasons, Thompson respectfully requests that the Court appoint him as lead plaintiff and approve his selection of Glancy Prongay & Murray LLP as lead counsel and Willis Spangler Starling as liaison counsel for the class.

Dated: October 24, 2023

**WILLIS SPANGLER STARLING**

By: _Patrick Warner_
Patrick G. Warner (0064604)
4635 Trueman Boulevard, Suite 100
Hilliard, Ohio 43026
Telephone: (614) 586-7900
Facsimile: (614) 586-7901
pwarner@willisattorneys.com

*Liaison Counsel for Richard Thompson and Proposed Liaison Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
clinehan@glancylaw.com

*Counsel for Richard Thompson and Proposed Lead Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz

1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

## CERTIFICATE OF SERVICE

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On October 24, 2023, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of Ohio, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 24, 2023, at Hilliard, Ohio.

*/s/ Patrick G. Warner*
Patrick G. Warner (0064604)