**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MENACHEM GUREVITCH, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:23-cv-01520-DCN |
| Plaintiffs, | |
| vs. | |
| KEYCORP, CHRISTOPHER M. GORMAN, BETH E. MOONEY, CLARK H. I. KHAYAT, and DONALD R. KIMBLE, | |
| Defendants. | |

**ROBERT J. TITMAS' MEMORANDUM OF LAW IN REPLY TO THE
<u>COMPETING LEAD PLAINTIFF MOTION</u>**

Robert J. Titmas ("Mr. Titmas") respectfully submits this memorandum of law in reply to the competing lead plaintiff motion and in further support of his motion for appointment as lead plaintiff, filed in the above-captioned securities class action lawsuit (ECF No. 18) pending against KeyCorp ("Key" or the "Company"), Christopher M. Gorman ("Gorman"), Beth E. Mooney ("Mooney"), Clark H. I. Khayat ("Khayat"), and Donald R. Kimble ("Kimble"), (collectively, "Defendants") (the "Action").

## I.      PRELIMINARY STATEMENT

The opposition briefing submitted in this action confirms that movant Robert J. Titmas's motion for lead plaintiff should be granted in its entirety. The only other movant opposing Mr. Titmas's appointment is Richard Thompson. Although Mr. Thompson claims a greater loss than Mr. Titmas, Mr. Thompson engaged in an atypical trading strategy otherwise known as an "in-and-out" trading. Mr. Thompson purchased thousands of shares and entirely exited his position *10 separate times* during the Class Period. Out of those 10 separate exits, 9 of them resulted in Mr. Thompson selling his shares for a ***profit*** that he then excluded from his loss analysis. Mr. Thompson's trading history shows that he was trading Key stock based on movements in the price of the stock and not on any public information being disseminated by the Company. This subjects Mr. Thompson to "unique defenses" concerning the securities fraud element of "reliance" that renders him inadequate to represent the Class.

Mr. Titmas, on the other hand, presents none of these issues. He easily meets the typicality and adequacy requirements of Rule 23. Mr. Titmas is typical as he acquired 10,800 Key shares during the Class Period, held all 10,800 shares and was damaged as a result. Nor does Mr. Titmas have any interests adverse to the class and, as demonstrated in his declaration filed with his opening his motion, he will zealously represent the Class. ECF No. 18-6.  Mr. Titmas is also adequate as

he shares common interests with the unnamed Class members; and he will vigorously prosecute the action with the assistance of his qualified chosen counsel. In fact, no movant has made any arguments against Mr. Titmas's adequacy or typicality. Mr. Thompson simply cites that Mr. Titmas's loss is smaller. Accordingly, Mr. Titmas respectfully requests that his motion be granted in its entirety.

## II.      ARGUMENT

### A.      Mr. Thompson Fails to Address His Atypical Trading Pattern.

In his opposition brief, Mr. Thompson claims that he is entitled to the "most adequate plaintiff" presumption simply because he claims the "largest financial interest". ECF No. 23 at 1, ("Robertson Opp."). But this is entirely against both the PSLRA and case law. Not only does the "most adequate plaintiff" need to have the "largest financial interest" they must *also* satisfy Rule 23's typicality and adequacy requirements *before* the presumption is triggered. Here, Mr. Thompson is not typical of the Class he seeks to represent because he engaged in "in-and-out" trading throughout the Class Period that would "dog" the Class during the life of this litigation should he be appointed. *See Rodriguez v. Draftkings Inc.*, No. 21 Civ. 5739 (PAE), et al., 2021 U.S. Dist. LEXIS 219489, at \*26-27 (S.D.N.Y. Nov. 12, 2021) (rejecting in-and-out trader as lead plaintiff where atypicality issues would prejudice class in later stages of litigation) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 228 (1988).

Specifically, shareholders that engage in in-and-out trading strategies are unable to establish the element of "reliance" in a Section 10(b) and Rule 10b-5 securities fraud lawsuit, as their trading pattern suggests they did not rely on the alleged misstatements and omissions. As explained in Mr. Titmas's opposition, Mr. Thompson had a pattern of repeatedly buying thousands of Key shares and then entirely exiting his position. *See* ECF No. 22 at 4-5. In fact, Mr. Thompson

2

purchased thousands of shares and entirely exited his position **10 separate times** during the Class Period. And out of those 10 separate exits, 9 of them resulted in Mr. Thompson selling his shares for a **profit** of over $30,000 that his loss analysis does not account for.

This type of trading pattern raises issues of "reliance" as it is unclear if Mr. Thompson relied on Defendants' alleged misrepresentations or was trading on unrelated factors, such as abnormalities in the movement of Key's stock price. If the latter is true, Defendants may be able to successfully rebut the "fraud-on-the-market" presumption of reliance and leave the class unable to satisfy "predominance" under Rule 23(b) during class certification proceedings. *See*, *e.g.*, *Semerenko v. Cendant Corp.*, 223 F.3d 165, 179 n.7 (3d Cir. 2000) ("the defendant may also rebut the presumption by showing that the investor would have purchased or sold the securities at that price even with full knowledge of the misrepresentation, that the investor traded in the securities based on an actual belief that the market price was inaccurate, or that the investor's decision to trade was based on some factor other than the market price."). Mr. Thompson's transaction history shows that he was purchasing, selling, repurchasing, reselling, and repurchasing, to a total of 10 separate in-and-out transactions. Thus, Defendants will argue that Mr. Thompson was not relying on any alleged false statement and, in turn, should not be able to avail himself of the "fraud-on-the-market" presumption of reliance. *See Draftkings*, 2021 U.S. Dist. LEXIS 219489, at *27 (rejecting movant because of potential reliance defenses and collecting cases holding similarly); *see also Plymouth Cty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 719 (S.D. Tex. 2021) (high-frequency trader "raise[s] serious concerns about [a movant's] typicality and about his susceptibility to the defense that he was trading in response to information other than the alleged misstatements and omissions" and ultimately rejected movant); *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 U.S. Dist. LEXIS 197529, at *21-22 (E.D. Tex. Feb. 28, 2014) (rejecting

movant engaged in "rapid trading activity," as "[t]his activity would not be typical of the class because the proposed class's damages stem from reliance on Defendant's financial statements"); *Porzio v. Overseas Shipholding Grp.,* 2013 U.S. Dist. LEXIS 14463, at \*16 (S.D.N.Y. Feb. 1, 2013) ("Even if the alleged losses [of in-and-out traders] could, on some theory, establish the greatest financial interest, . . . the OSG Investor Group is subject to 'unique defenses that render [them] incapable of adequately representing the class,' thus rebutting any presumptive lead plaintiff status."); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) ("Having considered the parties' respective arguments, the Court finds that the Fund has failed to demonstrate that it will be an adequate lead plaintiff because it was a total in-and-out trader and may be unable to demonstrate loss causation."); *In re Veeco Instruments, Inc.,* 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (investor who sold stock prior to any corrective disclosure would "at the very least, [be] subject to a unique defense").[1]

Mr. Thompson is further compromised by the fact that he ***benefitted*** from the alleged fraud to the tune of $30,000 due to those in-and-out transactions (while at the same time not offsetting his losses by this amount). Mr. Thompson describes his loss calculation as using a "modified LIFO methodology" in his opposition but the cases he cites to justify this methodology are inapposite.

---

[1] *See also Shaffer v. Digit. Generation, Inc.*, No. 3:13-CV-1684-N, 2013 U.S. Dist. LEXIS 204461, at \*8-9 (N.D. Tex. Sept. 19, 2013) (rejecting movant whose "high volume trading activity, including buying and selling [company] stock on the same day, raises serious concerns about his typicality and his susceptibility to unique defenses"); *Bang v. Acura Pharms., Inc.*, Case No. 10 C 5757, 2011 U.S. Dist. LEXIS 2550, at \*16 (E.D. Ill. Jan. 11, 2011) ("[U]nusually high-volume and high frequency trading can raise challenges to typicality and raise a unique defense regarding lack of reliance on material misstatements and omissions."); *Tsirekidze v. Syntax-Brillian Corp.,* Nos. CV–07–2204-PHX-FJM, et al., 2008 U.S. Dist. LEXIS 118562, at \*18 (D. Ariz. Apr. 7, 2008) (rejecting movant because its "frantic trading belies any true reliance on company reports or even the integrity of the stock price itself"); *In re Peregrine Sys., Inc. Sec. Litig.*, No. 02-cv-870, 2003 WL 23955714, at \*3 (S.D. Cal. Jan. 30, 2003) ("Poe may be subject to the unique defense that he relied not on any misstatement or omission of material fact when deciding to buy or sell, but instead on the daily fluctuations in the stock price.").

Thompson Opp. at 3. In *Plagens v. Deckard*, one of the lead plaintiff movants was advocating for a "modified LIFO methodology" that is typically known as '*Dura* LIFO', as it properly excludes *losses* from investments sold before a corrective disclosure pursuant to the Supreme Court's holding in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005). *Plagens*, No. 1:20-cv-2744, 2021 U.S. Dist. LEXIS 143359 (N.D. Ohio Aug. 2, 2021). Not only was the movant in *Plagens* not a complete in-and-out seller like Mr. Thompson, but the opinion discusses that *losses* are to be excluded from the analysis, not *gains*. *Id.* at \*22. To exclude realized gains would go against the entire purpose of using LIFO in the first place. *Id*. at 23 ("Under the LIFO method, in contrast, a plaintiff's gains during the class period are offset from its ultimate losses. That is, any sale of stock during the class period is 'matched against' the last shares purchased. In other words, LIFO helps reveal whether plaintiffs actually profited from class period transactions due to inflated stock prices.") (internal quotations and citations omitted). *Peacock v. Dutch Bros., Inc.* too misses the point. In that case, the court dealt with whether and to what extent to account for losses from transactions that occurred before certain corrective disclosure and/or sales of shares that had been purchased prior to the start of the class period. No. 23-cv-1794 (PAE), 2023 U.S. Dist. LEXIS 135360 (S.D.N.Y. Aug. 3, 2023). Importantly, none of these cases stands for the proposition that "in-and-out" trading strategies are acceptable or that profits from "in-and-out" trades need not be accounted for.

Where, as here, a movant presents "unique defenses" based on his "in-and-out" trading strategy, courts routinely refuse to allow that movant to serve as a lead plaintiff or class representative. *See, e.g., George v. China Auto. Sys., Inc.,* 2013 WL 3357170, at \*7 (S.D.N.Y. July 3, 2013) (denying class certification where lead plaintiffs "subject[ed] themselves to unique inquiries regarding their trading patterns and why they made investment decisions… These

5

inquiries will also require considerable time and resources and indeed threaten to become the focus of the litigation."); *In re Safeguard Scis.,* 216 F.R.D. 577, 582 (E.D. Pa. 2003) ("In light of Lead Plaintiff Adal's employment as a day trader (or 'position trader') who typically focuses on technical price movements rather than price, we find that even under a fraud-on-the-market theory, Defendants have presented compelling reason to rebut the reliance presumption.").

In selecting a lead plaintiff, the Court's concern is not whether Defendants will ultimately succeed on a "unique defense." *Batter v. Hecla Mining Co. et al.,* Nos. 19-cv-4883 (ALC); 19-cv-05719 (ALC), 2020 U.S. Dist. LEXIS 51665, at *22 (S.D.N.Y. Mar. 25, 2020) ("Where there is at least a potential that the presumptively most adequate Lead Plaintiff will be subject to unique defenses . . . disqualification is appropriate."); *Schaffer v. Horizon Pharma plc,* No. 16-CV-1763 (JMF), 2016 U.S. Dist. LEXIS 83175, at *10 (S.D.N.Y. June 27, 2016) ("[M]any courts have rejected appointments of Lead Plaintiffs based on *potential* risks.") (emphasis in original). Instead, the Court should deny Mr. Thompson's motion because there is no reason to subject the class to the risk that class certification will be denied, or even that there will be an expensive and lengthy distraction litigating Mr. Thompson's status as an in-and-out trader.

### B. Mr. Titmas is the Presumptive Lead Plaintiff.

Aside from the largest financial interest, the PSLRA requires that the presumptive lead plaintiff "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With Mr. Thompson disqualified, Mr. Titmas has the next largest financial interest. He also has demonstrated a *prima facie* showing of adequacy and typicality under Rule 23. Mr. Titmas, like all members of the Class, (1) purchased Key securities during the Class Period; (2) at prices artificially inflated by the false and misleading statements and/or omissions by Defendants; and (3) suffered heavy losses as a result of Defendants' material misstatements. Thus, Mr. Titmas' claims are substantially

similar, if not identical, to those of absent Class members, making him 'typical'. *See Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 444 (S.D. Ohio 2009) (collecting cases).

Further, Mr. Titmas is adequate because he has common interests with the unnamed Class members; and he will vigorously prosecute the action with the assistance of Levi & Korsinsky, LLP and Cummins Law LLC, his qualified counsel. *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043, at *29 (N.D. Ohio May 12, 2004). Mr. Titmas, a retired business owner and stockbroker with a degree in finance readily meets these requirements as he has no conflicts with absent Class members and is highly motivated to recover for losses suffered from Defendants' alleged violations of the federal securities laws – the same injury incurred by the proposed Class, arising from the same alleged conduct. Indeed, Mr. Thompson's only opposition to Mr. Titmas's motion is that he possesses a smaller financial interest, as Mr. Titmas is not subject to any unique defenses and is able to adequately and fairly protect the interests of the Class. 15 U.S.C § 78u-4(a)(3)(B)(iii)(II); *St. Clair Cnty. Emples. Ret. Sytem v. Acadia Healthcare Co.,* No. 3:18-cv-00988, 2019 U.S. Dist. LEXIS 22095, at *7 (M.D. Tenn. Jan. 9, 2019). Accordingly, Mr. Titmas's motion should be granted in its entirety.

## III.   CONCLUSION

For all the foregoing reasons, Mr. Titmas respectfully requests that the Court grant his motion: (i) appointing him as Lead Plaintiff; (ii) approving his selection of Levi & Korsinsky as Lead Counsel and Cummins as Liaison Counsel; and (iii) granting such other relief as the Court may deem just and proper.

*[Signatures on following page]*

7

DATED: October 24, 2023

**CUMMINS LAW LLC**

/s/ *James R. Cummins*
James R. Cummins (0000861)
312 Walnut Street, Suite 1530
Cincinnati, Ohio 45202
Tel: 513.721.9000
Fax: 513.721.9001
jcummins@cumminslaw.us

*Liaison Counsel for Mr. Titmas and*
*[Proposed] Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton (*pro hac vice* forthcoming)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Mr. Titmas and [Proposed]*
*Lead Counsel for the Class*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys on record.

/s/ *James R. Cummins*
James R. Cummins

9