**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MENACHEM GUREVITCH, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> KEYCORP, CHRISTOPHER M. GORMAN, BETH E. MOONEY, CLARK H. I. KHAYAT, and DONALD R. KIMBLE, <br><br> Defendants. | Case No. 1:23-cv-01520-DCN <br><br> **LEAD PLAINTIFF MOVANT RICHARD THOMPSON'S MOTION FOR RECONSIDERATION OF THE COURT'S OPINION AND ORDER DATED DECEMBER 26, 2023 (DKT. NOS. 32, 33); AND FOR A STAY OF PROCEEDINGS PENDING RESOLUTION OF THIS MOTION** |

Lead Plaintiff Movant Richard Thompson ("Thompson") respectfully requests that the Court reconsider its December 26, 2023 Memorandum of Opinion Regarding Appointment of Lead Plaintiff and Approval of Selection of Counsel (Dkt. No. 32, "Opinion") and Order (Dkt. No. 33), vacate the Opinion and Order, appoint Thompson as lead plaintiff, and approve Thompson's selection of Glancy Prongay & Murray LLP as lead counsel and Willis Spangler Starling as liaison counsel for the class. As the basis for reconsideration, Thompson submits that the Opinion correctly identifies Thompson as the movant entitled to the statutory presumption that he is the most adequate plaintiff to be appointed as lead plaintiff, but errs in that the Opinion does not give effect to the presumption.[1] If corrected, the presumption is not rebutted, Thompson should be appointed as lead plaintiff, and his selection of counsel should be approved.

Given that this motion may cause Thompson to become the lead plaintiff and take leadership of this action on behalf of the proposed class, Thompson also respectfully requests that the Court enter an Order staying all other proceedings in this action pending resolution of this motion.

## I. THE OPINION CORRECTLY IDENTIFIES THOMPSON AS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF TO BE APPOINTED AS LEAD PLAINTIFF

The Opinion correctly holds that Thompson is entitled to the presumption that he is the "most adequate plaintiff" to be appointed as lead plaintiff under the Private Securities Litigation

---

[1] *See* Fed. R. Civ. P. 60(b)(1) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . ."); *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of final judgment. A district court may modify, or even rescind, such interlocutory orders.") (citations omitted); *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945-46 (6th Cir. 2004) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.") (citation omitted).

Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), because he filed a timely motion, undisputedly has the largest financial interest according to every accepted metric, and preliminarily satisfies the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* Opinion at 6-12.

## II.    THE OPINION DOES NOT GIVE EFFECT TO THE PRESUMPTION

### A.    To Rebut the Presumption that Thompson Is the Most Adequate Plaintiff the Opinion Must Articulate Evidence Proving that Thompson Is Inadequate or Subject to a Unique Defense, and Cannot Compare Thompson and Titmas' Respective Typicality or Adequacy

The PSLRA states that the presumption may be rebutted "***only upon proof*** by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and ***adequately*** protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff ***incapable*** of ***adequately*** representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).

To hold the presumption has been rebutted, the "competing movants must point to evidence of inadequacy" and the district court "***must articulate how the evidence proves inadequacy***." *In re Mersho*, 6 F.4th 891, 901-902 (9th Cir. 2021) (emphasis added); *see also In re Cavanaugh*, 306 F.3d 726, 729 n.2 (9th Cir. 2002) ("That the presumption is rebuttable does not mean that it may be set aside for any reason that the court may deem sufficient."). Failing to give effect to the presumption is clear error. *See Mersho*, 6 F.4th at 901 (holding the district court committed "clear error" because it "did not give effect to the presumption" and thereby "acted contrary to the statutory process set out in the PSLRA"). Setting aside a presumption without proof based on evidence is particularly "troubling" where, as here, "it result[s] in the appointment of a lead plaintiff whose losses are less than half or one-third of what [the presumptively most adequate plaintiff] suffered." *Mersho*, 6 F.4th at 901 n.3. Such a result is "incongruous with the PSLRA's

presumption that the investors with the largest stake have the greatest incentive to supervise the litigation closely." *Id.*

The PSLRA presumption also does not provide space for a comparative analysis of the movants' relative typicality or adequacy. *See Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job."). "That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence." *Id.*; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job.") (brackets omitted).

**B.      The Opinion Holds the Presumption Is Rebutted on the Basis that Thompson Is Subject to Unique Typicality and Reliance-Based Defenses that Will Become a Distraction**

The Opinion holds that Thompson is subject to the unique defense that he is "atypical" because he purchased and sold shares during the class period, exiting his position 10 times. *See* Opinion at 12-16. The Opinion acknowledges, however, that Thompson purchased and held 19,000 shares through the end of the class period as compared to Titmas, who held only 10,800 shares through the end of the class period. *See* Opinion at 10. The Opinion also appears to credit the claim that Thompson's trading pattern may render him "unable to establish the element of 'reliance'"—which is a another unique defense. Opinion at 13. The Opinion further holds that, while these unique defenses may not ultimately be proven, the "foreseeable *possibility*" they may become distracting is sufficient to rebut the presumption that Thompson is the most adequate plaintiff. *See* Opinion at 15 (emphasis in original).

Notably, the Opinion does not hold that Thompson is "inadequate" to represent the class. *See* Opinion at 16 (holding that "the factor of true adequacy is not a determinative one here," reasoning that Thompson does not have "interests 'antagonistic' to the potential class" and that he "retained experienced and qualified proposed lead and liaison counsel"). This finding of the Court conflicts with the Court's analysis disqualifying Thompson on the basis of a unique defense because the PSLRA allows disqualification only if the defense "render[s] such plaintiff ***incapable of adequately representing the class***." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb) (emphasis added). Moreover, the Opinion does not specifically articulate the evidence that proves that Thompson is inadequate or subject to a unique defense.

**C.     The Opinion Does Not Articulate Evidence Proving that Unique Typicality or Reliance-Based Defenses Will Become a Distraction**

The Opinion does not "articulate how [Thompson's trading] proves inadequacy" or atypicality. *Mersho*, 6 F.4th at 902. First, the Opinion points to no evidence that Thompson's trading pattern is, in fact, atypical. To the contrary—the class period in this action is more than 3 years and 3 months long, *see* Dkt. No. 1 ¶ 1, and KeyCorp has a market capitalization of more than $13 billion with millions of shares traded daily.[2] As such, while Thompson is not obligated to provide evidence proving his own typicality, if the evidence were considered, there are presumably thousands of class members who purchased and sold their shares during the class period, some for losses, some for gains—many of which may have done so far more times than Thompson. Such a defense based on this trading would also therefore not be "unique" to Thompson. Moreover, the typicality requirement is satisfied so long as Thompson's claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his . . .

---

[2] Keycorp market capitalization and trading data is publicly available through *Yahoo! Finance* at https://finance.yahoo.com/quote/KEY (last visited January 3, 2024).

claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citation omitted). Thompson's claims "need not be identical" to all investors'. *Iron Workers Loc. Union No. 17 Ins. Fund & its Trustees v. Philip Morris Inc.*, 182 F.R.D. 523, 537 (N.D. Ohio 1998). Thompson is typical because he purchased 19,000 shares during the class period, and held those shares through every corrective disclosure, which is the basis of all claims in this action. No evidence is presented proving that Thompson is not "typical."

Second, the Opinion does not articulate evidence proving that Thompson's trading pattern will become a distraction in this litigation. In fact, the Opinion appears to present good evidence that it will ***not*** become a distraction. The Opinion points out that Thompson has a profit (gain) on 9 of his 10 purchases and sales. *See* Opinion at 13. Thompson does not contest this fact. Since damages are an essential element of a securities fraud claim, Thompson is not and has not alleged that he has a valid securities fraud claim based on any of these transactions. *See* Dkt. No 19-3 (Thompson's Financial Interest Analysis, excluding the purchase/sale transactions). Defenses to claims Thompson is not pursuing cannot conceivably become a distraction. The only one of Thompson's 10 purchases and sales that resulted in a loss was the purchase of 5,000 shares on March 15, 2021 for $20.7099 per share and sale of those shares ***three weeks later*** on April 5, 2021 for $20.38 per share, resulting in a loss of just ***$1,649.50***. *See* Dkt. No. 19-2. This is less than 1% of Thompson's loss on his 19,000 retained shares ($173,921.20). *See* Opinion at 10. As such, even the single purchase and sale on which Thompson has a loss would not distract him from the more central claims in this action.[3]

---

[3] Moreover, as discussed, *supra*, many class members likely bought and sold shares during the class period for a gain or a loss. As such, Thompson's trading is not atypical, and any defense based on such trading would not be unique to Thompson.

Third, the Opinion does not articulate evidence proving that Thompson's trading subjects him to a unique reliance-based defense. As an initial matter, for securities fraud, there is a rebuttable "presumption of reliance" that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *Plumbers & Pipefitters Nat. Pension Fund v. Burns*, 292 F.R.D. 515, 525 (N.D. Ohio 2013) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988)). With respect to the 19,000 shares Thompson purchased and held through the corrective disclosures in this action, the Opinion does not present any evidence that would rebut the presumption that Thompson relied on the integrity of the market price when purchasing those shares. With respect to Thompson's purchases and sales earlier in the class period, those trades are also entitled to a presumption of reliance. While the Opinion correctly points out that short-selling or day trading may rebut the presumption of reliance, *see* Opinion at 14-15 (citing *Rodriguez v. Draftkings*, Inc., No. 21-cv-5739, 2021 WL 5282006, at *10-*11 (S.D.N.Y Nov. 12, 2021)), the Opinion does not articulate any evidence that Thompson sold short or day traded—he did not.[4] As such, the Opinion does not articulate evidence that Thompson is subject to a unique reliance-based defense. In fact, even the *Draftkings* court agrees that "fully exit[ing]" ones stock position multiple times during the class period "is not . . . alone dispositive of . . . inadequacy" without also short-selling or day trading. *Draftkings*, 2021 WL 5282006, at *10.[5]

---

[4] There is also no articulated evidence that Thompson is atypical, inadequate, or subject to unique defenses on the basis that he is a "high-frequency trader" because he purchased and sold shares 10 times over more than 18 months. *See* Dkt. No. 19-2 (Thompson's transactions); Opinion at 13 ("Titmas also seeks to rebut a 'presumption' that Movant Thomas satisfies the 'typicality' requirement based on the 'high frequency' of what he identifies as Thompson's trading history . . . .").

[5] Moreover, any reliance-based defense applicable to Thompson would not be unique because many investors likely bought and sold shares during the class period. And since Thompson is not alleging claims for transactions on which he made a profit, there is no risk that reliance-based defenses on those non-existent claims would become a distraction or be raised at all.

*    *    *

The Opinion does not "articulate how the evidence proves" Thompson is subject to a distracting unique typicality defense. *Mersho*, 6 F.4th at 902. As such, the Opinion "did not give effect to the presumption" which is "contrary to the statutory process set out in the PSLRA. *Id.* at 901.

**D.     The Opinion Relies on Statutorily Prohibited Comparisons of Thompson and Titmas' Respective Typicality and Adequacy**

The Opinion improperly relies on findings that Titmas appears more typical or adequate than Thompson to support the Court's finding that Thompson is inadequate and/or subject to unique defenses. For example, on page 14 of the Opinion, after laying out Titmas' arguments with respect to Thompson's purported atypicality, the Opinion states "[o]n the other hand, there is no dispute that Movant Titmas can satisfy the typicality requirement." Opinion at 14. More directly, on page 15 the Opinion holds:

> This Court finds that the possibility of unique defenses as to, at least portions of, Movant Thompson's trading history in KeyCorp stock, as well as the potential distractions that litigation over his trading history (even if not successful) might cause, work to rebut the presumption that Movant Thompson is the "most adequate plaintiff," ***especially in light of the fact that Movant Titmas' claims are subject to none of these distracting factors (or any others that are apparent).***

Opinion at 15 (emphasis added). Here, the Opinion directly relies on Titmas's apparent adequacy and typicality to find that the presumption that Thompson is the most adequate plaintiff is rebutted. Such comparative analysis violates the PSLRA because it fails to give effect to the presumption. *See Cavanaugh*, 306 F.3d 732 ("[A] straightforward application of the statutory scheme . . . provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case.").

If proper effect is given to the PSLRA presumption, the presumption is not rebutted.

7

### III. CONCLUSION

For the foregoing reasons, Thompson respectfully requests that the Court enter an Order (1) staying all other proceedings in this action pending the resolution of this motion; (2) vacating the Opinion and Order dated December 26, 2023; (3) appointing Thompson as lead plaintiff; (4) approving Thompson's selection of Glancy Prongay & Murray LLP as lead counsel and Willis Spangler Starling as liaison counsel for the class; and (5) granting such other relief as the Court may deem just and proper.

Dated: January 5, 2024

**WILLIS SPANGLER STARLING**

By: /s/ Patrick G. Warner
Patrick G. Warner (0064604)
4635 Trueman Boulevard, Suite 100
Hilliard, Ohio 43026
Telephone: (614) 586-7900
Facsimile: (614) 586-7901
pwarner@willisattorneys.com

*Liaison Counsel for Richard Thompson and Proposed Liaison Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
clinehan@glancylaw.com

*Counsel for Richard Thompson and Proposed Lead Counsel for the Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007

*Additional Counsel*

# CERTIFICATE OF SERVICE

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On January 5, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of Ohio, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 5, 2024, at Hilliard, Ohio.

*/s/ Patrick G. Warner*
Patrick G. Warner (0064604)